**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

PAYCARGO, LLC,

     Plaintiff,
CASE NO.:_____

vs.
JURY TRIAL DEMANDED

CARGOSPRINT LLC,
JOSHUA WOLF, an individual,

     Defendants.
_____/

**COMPLAINT**

Plaintiff PayCargo, LLC ("Plaintiff" or "PayCargo"), by and through its undersigned

counsel, brings this action for trade secret misappropriation under 18 U.S.C § 1836; violation of

Florida's Computer Abuse and Data Recovery Act; Florida Common Law Conversion of

confidential and proprietary information; infringement of United States Trademark Registration

Nos. 3,519,112, 3,900,069, and 3,347,315 under 15 U.S.C § 1114; breach of Settlement

Agreement; Federal unfair competition under 15 U.S.C. § 1125; Florida Common Law Unfair

Competition; and breach of Services Agreement, and related causes of action, against Defendant

CargoSprint LLC ("CargoSprint") and Joshua Wolf ("Wolf") (collectively "Defendants"), and

alleges as follows:

**INTRODUCTION**

1.     PayCargo was founded in 2008 to create a web-based payment and settlement

platform for the shipping and cargo industry—the PayCargo System. The company offers unique,

web-based financial software solutions to carriers and shippers serving the global supply chain

looking for efficient ways to expand their business. PayCargo enjoyed an initial period of growth,

1

but Defendants have engaged in conduct that threatens PayCargo's ability to compete on the merits.

2.      This lawsuit arises from harm to PayCargo's business interests as a result of Defendants' infringement of PayCargo's trademarks, misappropriation of PayCargo's trade secrets, abuse of authorized access to PayCargo's protected computer systems, breach of the PayCargo Services Agreement, and breach of a prior Settlement Agreement, among others.

3.      Defendants, from the inception of CargoSprint, have used their status as PayCargo customers to obtain and unlawfully leverage PayCargo's confidential information and trade secrets to solicit PayCargo's customers and business contacts, and to replicate PayCargo's software and related system functions.

### PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff PayCargo, LLC is a Delaware limited liability company authorized to transact business within the State of Florida, and with its principal place of business in Miami-Dade County, Florida at 201 Alhambra Circle, Suite 711, Coral Gables, Florida 33134.  PayCargo is a citizen of Florida and of Delaware.

5.      Defendant CargoSprint LLC is a Georgia limited liability company. CargoSprint's principal place of business is at 21 Eastbrook Bend, Suite 202 Peachtree City, GA 30269, according to documents on file with the Georgia Secretary of State. CargoSprint's website, www.cargosprint.com/about, also identifies that its headquarters are in Georgia:



6.      CargoSprint was originally formed as PayAirCargo LLC in 2012, but changed its name to CargoSprint LLC on December 2, 2017. As shown above, CargoSprint has a software and operations center in Guadalajara, Mexico and a customer service and software center in Rajasthan, India, in addition to its headquarters in Georgia. CargoSprint is a citizen of Georgia and is not a citizen of Florida or Delaware.

7.      Joshua Wolf is an individual identified by CargoSprint and himself as the founder, CEO, and sole owner of CargoSprint.

8.      Defendants are engaged in—and the conduct described in this Complaint has a substantial effect on—interstate commerce, including the transfer of funds between accounts located in different states, and the movement of cargo between different states.

9.      This Court has subject matter jurisdiction pursuant to at least 18 U.S.C. § 1836, and 28 U.S.C. §§ 1331 and 1338 because this action arises under various laws of the United States as detailed below, and insofar as it arises from issues involving trade secrets related to a product or service used in interstate or foreign commerce belonging to Plaintiff and misappropriation of those trade secrets by Defendants, and Plaintiff's federal trademark registrations.

10.     This Court further has diversity jurisdiction over any state law claims pursuant to 28 U.S.C. § 1332 because PayCargo does not share citizenship with either Defendant, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

11.     This Court has supplemental jurisdiction over the various state law claims alleged herein pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy.

12.     The Court has personal jurisdiction over CargoSprint pursuant to Section 19.2 of the PayCargo Services Agreement. *See* **Exhibit A** (PayCargo Services Agreement). Wolf's

commission of intentional torts against PayCargo triggers the provisions of Florida's long-arm statute because the harms from Wolf's acts of trademark infringement against PayCargo are felt in Miami, Florida.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and this is the location where PayCargo has been harmed due to Defendants' unlawful actions.  Further, venue is appropriate in this judicial district because Section 19.2 of the PayCargo Services Agreement states that venue will be in Miami-Dade County, Florida for any proceeding arising out of the agreement or the transactions contemplated thereby.  **Exhibit A** (PayCargo Services Agreement). The Parties' Settlement Agreement also provides for venue in Miami-Dade County, Florida. **Exhibit B** (Trademark Settlement Agreement).

**GENERAL ALLEGATIONS**

**PayCargo**

14.     After witnessing the inefficiencies and costs related to unsettled transactions between shippers and carriers, the founders of PayCargo recognized the need for an effective system of expediting payments and availability of third party credit.  As a result, PayCargo began on or about January 20, 2008 in the shipping and cargo industry, with the initial purpose of creating electronic payment management services for the freight and cargo shipping industry  (the "Cargo Payment Services") to enable the facilitation of payments for shipping services and cargo in the United States (the "Cargo Payment Services Market"). This effort resulted in a secure and effective online software platform (the "PayCargo System") to make online freight payments and collections, and to facilitate dispute resolution between shippers and carriers.

15.     The PayCargo System also gives shippers the opportunity to establish freight credit ("PayCargo Credit") and eliminate the time constraints related to payment. With PayCargo Credit, carriers can boost business without assuming the risks associated with extending credit to their shipper customers. For shippers, it opens up a window of opportunity by providing shipping credit that previously was available to only a handful of large companies.

16.     The shipping and cargo industry responded enthusiastically to PayCargo's entry, generating extensive goodwill in PayCargo's trademarks, and prompting PayCargo to register three trademarks with the United States Patent and Trademark Office ("USPTO"):

| **Mark** | **Registration No.** | **Registration Date** | **15 U.S.C § 1065 Status** |
|---|---|---|---|
| PAYCARGO | 3,519,112 | October 21, 2008 | Incontestable |
| ➤PayCargo | 3,900,069 | January 4, 2010 | Incontestable |
| PAYCARGO | 3,347,315 | December 4, 2007 | Incontestable |

*See,* **Exhibit C** ('112 Registration); **Exhibit D** ('069 Registration); **Exhibit E** ('315 Registration) (collectively the "PayCargo Trademarks").

17.     Since the company's founding, now more than a decade ago, PayCargo's success in the industry has been the result of its investment in, and development of, confidential information and trade secrets. PayCargo's technological innovations include software development for the PayCargo System, and PayCargo has invested thousands of development hours and millions of dollars to develop the PayCargo System into the premier service for payment settlement in the shipping industry.

18.     PayCargo uses reasonable measures to protect its trade secrets, including the use of technological access barriers such as unique user names and passwords. PayCargo also imposes

5

contractual obligations on users of the PayCargo System via the PayCargo Services Agreement that require users to agree that they will not copy, reproduce, reverse engineer, decompile or otherwise misuse PayCargo's trade secrets and confidential information.

**CargoSprint and Wolf**

19.     CargoSprint was founded by Wolf in 2012 under the name PayAirCargo, LLC ("PayAirCargo").

20.     Wolf is the moving force behind CargoSprint's improper actions.

21.     CargoSprint is the alter ego of Wolf and the personal affairs of Wolf as sole owner of CargoSprint can be confused with, and/or are the same as, the business affairs of CargoSprint. Wolf has disregarded CargoSprint as a corporate entity and/or has taken actions to confuse personal affairs with CargoSprint's affairs.

22.     All actions of CargoSprint are made at the sole choice and direction of Wolf, including but not limited to Defendants' acts of trademark infringement and trade secret misappropriation.

23.     Wolf dominates and controls CargoSprint such that his personal actions are confused with corporate actions.

24.     PayAirCargo (now known as CargoSprint) started as a PayCargo customer on or about August 20, 2015 and PayCargo's records show Wolf created the PayAirCargo account.

25.     Due to the similarity of the name "PayAirCargo" to "PayCargo," PayCargo engaged Defendants in an extended dialogue regarding the confusingly similar nature of the name "PayAirCargo" to "PayCargo." These efforts culminated in  a cease a desist letter to Defendants outlining PayCargo's rights in the PayCargo Trademarks. As a result, Defendants and PayCargo entered into a Settlement Agreement on December 2, 2016, that, among other things, required

PayAirCargo to transfer www.PayAirCargo.com to PayCargo, and  to change its corporate name, and for Defendants to cease all use of PayAirCargo by May, 31, 2017.  **Exhibit B** (Trademark Settlement Agreement).

26.     Since then, CargoSprint's business and marketing plans have followed in the footsteps of PayCargo in an attempt to replicate the PayCargo System in virtually all material respects.

27.     According to CargoSprint's marketing communications, its "SprintPay" program appears to tout many of the same features and benefits of PayCargo's payment platform. For example, in discussing electronic payments through "SprintPay," CargoSprint states:

- "Most of our payments are delivered instantly and electronically. Vendor receives payment information alert automatically. Other vendors are paid same day with check via messenger."

- SprintPay generates reports that include remittance data and provides payers the ability to dispute charges.

- CargoSprint also offers SprintPay as tool available for white label integration, presumably through an application programming interface ("API").

All of these claimed features were first key features of the PayCargoSystem.

28.     Upon information and belief, CargoSprint used its PayCargo customer status as a Trojan horse to gain entry to the PayCargo System. Defendants then systematically exceeded the scope of their access authorizations, including providing the same to CargoSprint's Mexican and Indian based software teams, to replicate of the functionalities, workflow and payment process of the PayCargo System.

29.     CargoSprint also advertises a "CargoSprint Credit" program, which appears to be a derivative of the "PayCargo Credit" program PayCargo offers.

30.     CargoSprint's sole divergence from PayCargo's trailblazing path was CargoSprint's introduction of "SprintPass," which offers coordination services for warehouse cargo pick-up by freight and cargo shippers and handlers (the "Warehouse Pick-up Services"). SprintPass is the only dedicated stand-alone system that offers Warehouse Pick-up Services in the United States (the "Warehouse Pick-up Services Market").

31.     The purpose of CargoSprint's uncharacteristic divergence from PayCargo's path has since been revealed by CargoSprint's market conduct: CargoSprint developed SprintPass for the express purpose of creating an illegal and anticompetitive contractual tie between SprintPass and SprintPay. As a condition of obtaining the unique SprintPass, CargoSprint requires its customers to complete all cargo payment functions via SprintPay—at the exclusion of all other payment methods, when there is no technological basis for this requirement. PayCargo is pursing relief regarding Defendants' antitrust violation in a separate action in the Newnan Division of the Northern District of Georgia, in compliance with the antitrust venue requirements of 15 U.S.C. § 15.

## PayCargo Services Agreement

32.     CargoSprint uses the PayCargo System as an integral part of CargoSprint's payment processing and credit programs, and has used PayCargo's services in connection with thousands of transactions.

33.     Defendants have logged into the PayCargo System hundreds—if not thousands of times. Each time a user logs into the PayCargo System that user agrees to the PayCargo Services Agreement; thus Defendants are bound by the terms of the PayCargo Services Agreement.

34.     The Services Agreement includes many different provisions governing the use of the PayCargo System and users' obligations with respect to PayCargo's information. Below are select provisions illustrating certain of these obligations:

- Section 4.6(f): prohibition against "attempting to modify, decipher, decompile, disassemble, create derivative works or reverse engineer any of the software comprising or in any way making up part of the PayCargo Services."

- Section 16.2: prohibition against the ability to "disclose, reproduce, transfer nor use the other Party's Confidential Information except (i) as necessary in connection with providing or using the Services; (ii) as specifically allowed under this Agreement; or (iii) to the extent necessary to comply with Legal Requirements or a valid court order, provided the disclosing Party must use reasonable efforts to notify the other Party prior to disclosure (unless such notification is prohibited by Legal Requirements or a valid court order) so the other Party may seek a protective order or otherwise prevent or limit disclosure of its Confidential Information."

- Section 17.2(b): requirement that users "will not directly or indirectly copy, modify, translate, transmit, distribute, adapt, reproduce, reverse engineer, decompile, disassemble or otherwise attempt to derive source code or other trade secrets from the Sites."

*See* **Exhibit A** (PayCargo Services Agreement)

35.     Defendants' repeated assent to the PayCargo Services Agreement establishes Defendants' contractual duty to maintain the secrecy and confidentiality of information in the PayCargo System.

36.     The PayCargo Services Agreement also has an audit provision in Section 18 allowing PayCargo to "audit or inspect Customer's records related to its performance, duties or obligations under this Agreement."

37.     PayCargo, in an effort to avoid unnecessary litigation, sought to exercise its inspection right against Defendants to confirm Defendants had neither breached the terms of the Services agreement, nor misappropriated PayCargo's confidential information and trade secrets.

Defendants refused this opportunity to exonerate themselves against PayCargo's accusations of wrong-doing.

## Defendants' Breach of the PayCargo Services Agreement, Ensuing Unauthorized Access to the PayCargo System, and Acts of Trade Secret Misappropriation

38.     As mentioned above, PayCargo has developed software for the PayCargo System that embodies the source code, system architecture, and functionalities of the PayCargo System. The PayCargo System also houses PayCargo payer, vendor, and pricing information. Together this information constitutes the "PayCargo Trade Secrets" at issue in this action.

39.     The PayCargo Trade Secrets are not publicly available and PayCargo imposes strict control measures, on its employees and customers alike, to maintain the secrecy of those trade secrets.

40.     PayCargo has a Code of Conduct that employees, officers, and directors are required to acknowledge and sign. **Exhibit F** (PayCargo Code of Conduct). Section IV(H) of the Code of Conduct includes provisions related to the protection of PayCargo's trade secrets, the relevant portion of which is provided below:

> Some of our most valuable assets are not in tangible form but instead are intellectual property, which includes trademarks, service marks, patents, and copyrighted material. Also included is confidential, proprietary information such as trade secrets, customer lists, computer software and source code, sales and profit data, and strategic and business plans (for instance, possible mergers and acquisitions). Since our company's continued success depends on the careful development, use and protection of our intellectual property, we have a duty to protect it. We must take care not to discuss it where others may hear. We must also be sure not to transmit it in any form, or to any recipient, where unauthorized persons might receive it. Before transmitting intellectual property outside the company, including to a consultant or contractor, obtain the approval of PayCargo's legal counsel. Our obligation to preserve the confidentiality of PayCargo's proprietary information continues even after we are no longer employees of the Company. In the course of performing our job functions, we may receive information about possible transactions with other companies or receive confidential information about other

companies. This type of material is often their intellectual property and is subject to the same confidentiality guidelines.

**Exhibit F** (PayCargo Code of Conduct).

41.     In addition to imposing a duty on its employees, officers, and directors to ensure secrecy of trade secret information, PayCargo uses technological and physical access barriers to protect the PayCargo Trade Secrets, which are stored on PayCargo's protected computers. PayCargo's employees have unique individual logins and passwords that govern access to PayCargo's protected computer systems.

42.     PayCargo's protected server system has tiered access that restricts employee access permissions to trade secret information.  Only employees that need trade secret information to carry out their normal duties and responsibilities have access to those portions of PayCargo's protected computer systems.

43.     PayCargo further employs physical security measures surrounding access to its offices and electronically stored information.  Employees have keycards that provide access to the PayCargo's office space and a receptionist is at the front of the office to ensure unauthorized personnel do not enter PayCargo's facility.  The protected servers that store PayCargo's source code are behind lock-and-key physical security barriers and are password protected.

44.     PayCargo requires its customers and their employees to agree to the PayCargo Services Agreement to use the PayCargo System, and the PayCargo Services Agreement imposes duties to maintain the secrecy of the PayCargo Trade Secrets—as detailed in paragraphs 33-35 above. Further, the Services Agreement only authorizes a customer's designated employees—who must have a unique login and password—to access the PayCargo System and the user is prohibited from logging into servers or accounts for which access is not authorized.  *See* **Exhibit A** (PayCargo Services Agreement), Sections 4.2 and 4.5.

11

45.     Upon information and belief, in knowing violation of the Services Agreement, Defendants provided their access credentials to unauthorized users in CargoSprint's international software centers in Mexico and India—where CargoSprint reviewed the underlying structure, organization, flows, processes, and functions of the PayCargo System source code—resulting in the circumvention of PayCargo's technological access barriers,

46.     Upon information and belief, Defendants then worked in an illicit and clandestine manner to decompile the source code of the PayCargo System—all so CargoSprint could create an unauthorized reproduction of the PayCargo System under the guise of the CargoSprint name. Such was done and with the intent to piggy-back on the resources PayCargo expended to develop the PayCargo Trade Secrets; thus, causing harm to PayCargo's business interests.

47.     PayCargo's unlawful actions were accomplished under the direction and supervision of Wolf.

## Defendants' Infringement of the PayCargo Trademarks and Breach of the Settlement Agreement

48.     Wolf has actively and knowingly allowed, approved, or agreed to the use of "PayAirCargo" in connection with freight and cargo goods and services offered in direct competition with PayCargo's freight and cargo goods. He did so knowing that his business's name was merely adding the word "Air" to the existing PayCargo name and that this name is confusingly similar to the PayCargo Trademarks. Indeed, upon information and belief, Wolf chose the PayAirCargo name because it was confusingly similar, hoping that customers would sign up for his services because they believed PayCargo was providing them. This includes Wolf's decision to form CargoSprint as PayAirCargo.

49.     PayCargo is the owner of three incontestable federal trademarks and Defendants entered into a December 2016 trademark Settlement Agreement with PayCargo. In an effort to end Defendants' unfair competition via the improper trademark.

50.     The Settlement Agreement required PayAirCargo LLC to change its name and transfer the www.PayAircargo.com domain to PayCargo, and for Defendants to cease use of the confusingly similar name "PayAirCargo." **Exhibit B** (Trademark Settlement Agreement).

51.     The Settlement Agreement generously granted Defendants the ability to phase out use of PayAirCargo, and contained express prohibitions against Defendants' use thereof after May 31, 2017. CargoSprint continued to display "PayAirCargo has evolved!" on its customer invoices, however, long after that deadline.

52.     PayCargo was forced to send Defendants a July 10, 2018 cease and desist letter for Defendants' failure to comply with the Settlement Agreement. Defendants responded that they had taken all reasonable and necessary measures to cure their breaches and affirmed how further breaches would not occur.

53.     PayCargo recently became aware that Defendants continue to use and display "PayAirCargo" in commerce in connection with their freight and cargo goods and services—the same industry PayCargo operates in, and to the same categories of customers, cargo-freight shippers—all in willful violation of the Settlement Agreement and PayCargo's rights in the PayCargo Trademarks.

54.     PayCargo has observed how Defendants' unauthorized use of PayAirCargo caused consumers to incorrectly believe PayAirCargo is a division or subsidiary of PayCargo.

**COUNT I**
**MISAPPROPRIATION OF TRADE SECRETS**
**18 U.S.C. § 1836(b)**
(against all Defendants)

55.     PayCargo re-alleges and incorporates by reference paragraphs 1-54 as if fully set forth herein.

56.     This Count I is an action against the Defendants for violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b).

57.     PayCargo owns all right title and interest in the PayCargo Trade Secrets.

58.     The PayCargo Trade Secrets constitute trade secrets within the meaning of 18 U.S.C. § 1839(3) as they are types of business, technical information, engineering information, patterns, formulas, techniques, procedures, programs, and codes PayCargo has taken reasonable measures to keep secret, including but not limited to the use of the PayCargo Services Agreement, the PayCargo Code of Conduct, and physical and technological security barriers.

59.     PayCargo derives economic value from its trade secrets as they are not generally known to, and not readily ascertainable by, other persons who may be able to obtain economic value from the disclosure or use of the PayCargo Trade Secrets within the meaning of 18 U.S.C. § 1839(3)(B). Further, the PayCargo Trade Secrets are used and intended for use in interstate and foreign commerce. The freight and cargo shipping business typically involved transporting goods outside of a single state, and payments typically flow between parties outside of a single state.

60.     Defendants gained access to the PayCargo Trade Secrets because they are customers of PayCargo using the PayCargo System. They knew, or had reason to know that they acquired the PayCargo Trade Secrets by improper means, and/or disclosed or used those trade secrets without PayCargo's express or implied consent. Such knowledge is demonstrated by Defendants' agreement to the terms of the PayCargo Services Agreement.

14

61.     Defendants have knowingly used, accessed, reviewed, maintained and/or employed the PayCargo System to misappropriate the PayCargo Trade Secrets. At all times, Defendants knew or had reason to know that knowledge of the PayCargo Trade Secrets was derived from or through a person who had used improper means to acquire the PayCargo Trade Secrets, acquired the PayCargo Trade Secrets under circumstances giving rise to a duty to maintain the secrecy of thereof or limit the use thereof, or derived the PayCargo Trade Secrets from or through a person who owed a duty to PayCargo to maintain the secrecy of the PayCargo Trade Secrets or limit the use thereof.

62.     Defendants have used and continue to use the misappropriated PayCargo Trade Secrets for their own benefit.

63.     As a result of Defendants' actions, PayCargo has suffered commercial injury, and will continue to suffer irreparable injury unless Defendants' conduct is preliminarily and then permanently enjoined under 18 U.S.C. § 1836(b)(3)(A).

64.     Such injunction should be sufficient in scope and effect so as to prevent any actual or threatened misappropriation and on such terms reasonable to prevent the Defendants from further misappropriation.

65.     Defendants' conduct was willful and malicious, with disregard for PayCargo's rights, so as to justify an award of attorneys' fees under 1836(b)(3)(D).

66.     Defendants' conduct also requires the Defendants to pay damages to PayCargo for (i) PayCargo's actual loss caused by the misappropriation of PayCargo's trade secrets and (ii) damages for any unjust enrichment caused by Defendants' misappropriation of PayCargo's trade secrets.

## COUNT II
## VIOLATION OF FLORIDA'S COMPUTER ABUSE AND DATA RECOVERY ACT
### Florida Statute § 668.801-805
(against all Defendants)

67.     PayCargo re-alleges and incorporates by reference paragraphs 1-54 as if fully set forth herein.

68.     This Count II is an action, pursuant to Florida's Computer Abuse and Data Recovery Act ("CADRA"), directed against Defendants regarding their knowing and clandestine acts to obtain information from PayCargo's servers (and related computers) regarding the PayCargo System through unauthorized access, and by the improper acquisition of login credentials.

69.     One of two primary purposes of CADRA, set forth in Florida Statute § 668.801(1), is to protect and safeguard the owner of information stored on a "protected computer" used in the operation of a business from harm or loss caused by unauthorized access to such computer.

70.     A "protected computer" is defined broadly in Florida Statute § 668.802(6)&(7) to include a computer used in connection with the operation of a business that stores information, programs or code in which the stored information, programs or code can be accessed only by employing a technological access barrier ("a password, security code . . . or similar measure").

71.     CADRA prohibits an individual who knowingly and with intent to cause harm or loss "obtains information from a protected computer without authorization and, as a result, causes loss or harm" or "causes the transmission of a program, code, or command to a protected computer without authorization and, as a result of the transmission, causes harm or loss." See Fla. Stat. § 668.803.

72.     While a user may have previously obtained access or log-in credentials appropriately (i.e., was an "authorized user"), a login to a protected computer qualifies as "without

16

authorization" when the later access "[c]ircumvents a technological access barrier on a protected computer without the express or implied permission of the owner . . . or the express or implied permission of the owner of information stored in the protected computer."

73.     Under CADRA, a sufficient "harm" may be any impairment to the integrity, access, or availability of programs, systems or information." See Fla. Stat. § 668.802(4). Likewise, a "loss" may include any form of economic damages, lost profits, consequential damage, or "profits earned by a violator as a result of the violation." See Fla. Stat. § 668.802(5).

74.     PayCargo's operation of the PayCargo System requires PayCargo to employ servers that meet the definition of a "Computer" and "Protected Computer" because the PayCargo System servers are high speed data processing devices that perform logical and storage functions. In addition, the PayCargo System servers require users to enter a user name and password (a technological access barrier) to access the PayCargo System. PayCargo's use of a username and password is sufficient to effectively control access to PayCargo's protected computers because the usernames and passwords are individually created and not publicly available information.

75.     Under the PayCargo Service Agreement, Defendants acknowledged that PayCargo owned all intellectual property associated with the PayCargo System and agreed that they were prohibited from disclosure, reproduction, transfer and use of PayCargo's confidential information. Defendants further agreed that their use of the PayCargo System would be limited only to purposes specified in the PayCargo Services Agreement.

76.     As detailed above, Defendants have replicated in the SprintPay system virtually all of the services first provided by the PayCargo System. They did so by using their customer-level access to study and replicate the PayCargo System, in violation of the PayCargo Services Agreement.

17

77.     As such, when Defendants exceeded the scope of their authorization under the PayCargo Services Agreement they ceased to qualify as "Authorized Users," and use of logins or continued access to the PayCargo System constituted a circumvention of PayCargo's technological access barrier.

78.     Defendants' unauthorized user access to the PayCargo System was done knowingly and with intent to cause harm, and Defendants obtained information from PayCargo's protected computers without PayCargo's authorization. Defendants' actions have caused PayCargo to suffer damages and other commercial injury.

79.     PayCargo is entitled to injunctive relief against Defendants to protect PayCargo from irreparable harm caused by future CADRA violations.

80.     PayCargo is entitled to recover any and all information Defendants obtained through their CADRA violations.

81.     PayCargo is entitled to its reasonable attorney's fees.

82.     PayCargo's remedies under CADRA are in addition to remedies available for the same conduct under federal or state law.

## COUNT III
## CONVERSION OF CONFIDENTIAL AND PROPRIETARY INFORMATION
(against all Defendants)

83.     PayCargo re-alleges and incorporates by reference paragraphs 1-54 as if fully set forth herein.

84.     This Count III is an action for conversion, under the common law of the state of Florida, regarding the Defendants' unauthorized conversion of proprietary and confidential elements of the PayCargo System that may not necessarily rise to the level of a trade secret as defined under 18 U.S.C. § 1836.

85.     The Defendants, on multiple occasions, did knowingly, willfully, unlawfully, and with intent to steal, commit an act of conversion of the PayCargo's intellectual property, including, without limitation, the PayCargo Trade Secrets  and the PayCargo System and its underlying components.

86.     Defendants' acts of conversion were committed with the intent to permanently, or for an indefinite time, deprive PayCargo of its rightful possession, access to and use of the converted property, and to deprive PayCargo of the value of converted property.

87.     As a direct and proximate result of Defendants' conduct, PayCargo has suffered the deprivation of its property.

88.     Defendants' actions have interfered with PayCargo's enjoyment of its ownership rights over the converted property, over which the Defendants have improperly exercised acts of dominion and control.

89.     Further, Defendants' actions have created the opportunity to disclose, distribute, and/or sell the converted property, where the converted property provides PayCargo with a competitive advantage.

90.     As a direct and proximate result of the Defendants' conduct, PayCargo has suffered and will continue to suffer damages.

91.     As such, PayCargo seeks (i) compensatory damages equal to the loss incurred as a result of the Defendants' actions and proximately caused by the Defendants' misconduct; (ii) a preliminary and permanent injunction; (iii) punitive damages; (iv) costs of this action; and (v) such additional relief as the Court deems appropriate or to which PayCargo may be entitled by law.

## COUNT IV
## INFRINGEMENT OF UNITED STATES TRADEMARK REGISTRATION 3,519,112
## 15 U.S.C. § 1114
(against all Defendants)

92.     PayCargo re-alleges and incorporates by reference paragraphs 1-54 as if fully set forth herein.

93.     This Count IV is an action for Defendants' willful infringement of Trademark Registration No. 3,519,112 under 15 U.S.C. § 1114.

94.     PayCargo maintains exclusive and unencumbered rights to the incontestable '112 Registration for the standard character mark PAYCARGO in International Class 35 for "Information management in the nature of financial records management for the freight industry through electronic means; Financial records management services, namely, matching of cash and credit card transaction data with invoices and orders through electronic means; Customer service in the field of non-legal invoice and related billing online dispute resolution" and International Class 36 for "Electronic payment, namely, electronic processing and transmission of bill payment data for the freight industry; Processing and transmission of cash and credit card transaction data through electronic means; Provision and management of credit loans through electronic means."

95.     PayCargo's '112 Registration is prima facie evidence of its validity and enforceability.

96.     Defendants' later adoption and unauthorized use of "PayAirCargo" constitutes use of a mark that is colorable imitation of PAYCARGO due to the Defendants' trivial addition of "air" between "pay" and "cargo."

97.     Defendants' acts have caused and/or are likely to cause confusion, mistake or deception as to the source origin, sponsorship, or approval of Defendants' freight and cargo related

activities because Defendants' wrongful use is directed to financial activity and payment processing in the freight industry and to the same target group of customers of PayCargo.

98. As a proximate result of Defendants' actions, PayCargo has suffered and will continue to suffer, damages to its business reputation, and goodwill, and is entitled to recover damages for this injury.

99. Defendants' willful conduct has caused, and will continue to cause, irreparable harm to PayCargo unless Defendants are restrained and enjoined from further unlawful conduct.

100. PayCargo's remedy at law is inadequate to compensate it for the injuries it will suffer in the future for Defendant' continued acts of infringement alleged herein.

101. Defendants' forgoing acts of infringement have been and continue to be, deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

102. PayCargo is entitled to a permanent injunction against Defendants, as well as all other monetary remedies available under the Lanham Act, including but not limited to, compensatory damages, treble damages, disgorgement of profits, costs, and attorney's fees.

**COUNT V**
**INFRINGEMENT OF UNITED STATES TRADEMARK REGISTRATION 3,900,069**
**15 U.S.C. § 1114**
(against all Defendants)

103. PayCargo re-alleges and incorporates by reference paragraphs 1-54 as if fully set forth herein.

104. This Count V is an action for Defendants' willful infringement of Trademark Registration No. 3,900,069 under 15 U.S.C. § 1114.

105. PayCargo maintains exclusive and unencumbered rights to the incontestable '069 Registration for the check mark design and term "PAYCARGO",  , in International Class 35 for "Information management in the nature of financial records management

21

for the freight industry through electronic means; Financial records management services, namely, matching of cash and credit card transaction data with invoices and orders through electronic means; Customer service in the field of non-legal invoice and related billing online dispute resolution" and International Class 36 for "Electronic payment, namely, electronic processing and transmission of bill payment data for the freight industry; Processing and transmission of cash and credit card transaction data through electronic means; Provision and management of credit loans through electronic means."

106.    PayCargo's '069 Registration is prima facie evidence of its validity and enforceability.

107.    Defendants later adoption and unauthorized use of "PayAirCargo" constitutes use of a mark that is colorable imitation of the '069 Registration due to the Defendants' trivial addition of "air" between "pay" and "cargo."

108.    Defendants' acts have caused and/or are likely to cause confusion, mistake or deception as to the source origin, sponsorship, or approval of Defendants' freight and cargo related activities because Defendants' wrongful use is directed to financial activity and payment processing in the freight industry and to the same target group of customers of PayCargo.

109.    As a proximate result of Defendants' actions, PayCargo has suffered and will continue to suffer, damages to its business reputation, and goodwill, and is entitled to recover damages for this injury.

110.    Defendants' willful conduct has caused, and will continue to cause, irreparable harm to PayCargo unless Defendants are restrained and enjoined from further unlawful conduct.

111.    PayCargo's remedy at law is inadequate to compensate it for the injuries it will suffer in the future for Defendants' continued acts of infringement alleged herein.

112.    Defendants' forgoing acts of infringement have been and continue to be, deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

113.    PayCargo is entitled to a permanent injunction against Defendants, as well as all other monetary remedies available under the Lanham Act, including but not limited to, compensatory damages, treble damages, disgorgement of profits, costs, and attorney's fees.

**COUNT VI**
**INFRINGEMENT OF UNITED STATES TRADEMARK REGISTRATION 3,347,315**
**15 U.S.C. § 1114**
(against all Defendants)

114.    PayCargo re-alleges and incorporates by reference paragraphs 1-54 as if fully set forth herein.

115.    This Count VI is an action for Defendants' willful infringement of Trademark Registration No. 3,347,315 under 15 U.S.C. § 1114.

116.    PayCargo maintains exclusive and unencumbered rights to the incontestable '315 Registration for the standard character mark PAYCARGO in International Class 9 for "Computer e-commerce software to allow to perform electronic business transactions in the field of freight billing."

117.    PayCargo's '315 Registration is prima facie evidence of its validity and enforceability.

118.    Defendants later adoption and unauthorized use of "PayAirCargo" constitutes use of a mark that is colorable imitation of the '315 Registration due to the Defendants' trivial addition of "air" between "pay" and "cargo."

119.    Defendants' acts have caused and/or are likely to cause confusion, mistake or deception as to the source origin, sponsorship, or approval of Defendants' freight and cargo related

activities because Defendants' wrongful use is directed to financial activity and payment processing in the freight industry and to the same target group of customers of PayCargo.

120.    As a proximate result of Defendants' actions, PayCargo has suffered and will continue to suffer, damages to its business reputation, and goodwill, and is entitled to recover damages for this injury.

121.    Defendants' willful conduct has caused, and will continue to cause, irreparable harm to PayCargo unless Defendants are restrained and enjoined from further unlawful conduct.

122.    PayCargo's remedy at law is inadequate to compensate it for the injuries it will suffer in the future for Defendants' continued acts of infringement alleged herein.

123.    Defendants' forgoing acts of infringement have been and continue to be, deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

124.    PayCargo is entitled to a permanent injunction against Defendants, as well as all other monetary remedies available under the Lanham Act, including but not limited to, compensatory damages, treble damages, disgorgement of profits, costs, and attorney's fees.

## COUNT VII
## BREACH OF CONTRACT (Settlement Agreement)
(against all Defendants)

125.    PayCargo re-alleges and incorporates by reference paragraphs 1-54 as if fully set forth herein.

126.    Count VII is a breach of contract action under the common laws of the State of Florida against all Defendants for failure to comply with the terms of the Parties' Settlement Agreement.

127.    Defendants entered into the Settlement Agreement with PayCargo on or about December 2, 2016.

128.    PayCargo performed each and all of its obligations under the Settlement Agreement, or was excused from doing so.

129.    Defendants breached the Settlement Agreement by failing to comply with their obligations to cease use of "PayAirCargo" by May 31, 2017.

130.    Defendants continue to use "PayAirCargo" to this day.

131.    As a direct and proximate result of Defendants' breaches of the Settlement Agreement, PayCargo has suffered damages.

## COUNT VIII
## FEDERAL UNFAIR COMPETITION 15 U.S.C. 1125(a) – FALSE DESIGNATION OF ORIGIN
(against all Defendants)

132.    PayCargo re-alleges and incorporates by reference paragraphs 1-54 as if fully set forth herein.

133.    Count VIII is an action under 15 U.S.C. 1125(a) for unfair competition against all Defendants.

134.    PayCargo maintains exclusive and unencumbered right to the trade name PAYCARGO.

135.    Defendants have knowingly and intentionally used "PayAirCargo" in interstate commerce association with their competing cargo and freight goods and services, including through use on invoices.

136.    Defendants' use of "PayAirCargo" suggest to relevant and prospective customers in the cargo and freight business that Defendants are somehow affiliated, sponsored, endorsed, licensed, or related to PayCargo, when Defendants are not.

137.    Defendants' improper and unauthorized use of "PayAirCargo" is likely to cause, has caused, and will continue to cause confusion among actual and/or potential customers of

PayCargo as to the origin, sponsorship or approval of Defendants' cargo and freight goods and services.

138.    Defendants' improper actions are in violation of 15 U.S.C. § 1125(a) in that Defendants have used and continue to use, in relation to commercial activities, a false designation of origin, or a false or misleading description that is likely to cause confusion, and to cause mistake, and to deceive, as to the affiliation, connection, or association of the Defendants with PayCargo.

139.    As a result of the forgoing, PayCargo has suffered, and will continue to suffer, irreparable harm as a proximate and direct result of the forgoing acts of unfair competition caused by Defendants.

140.    PayCargo will suffer additional irreparable harm unless and until Defendants are preliminarily, and later permanently enjoined by the Court from continuing such acts.

141.    PayCargo has not adequate remedy at law.

142.    Defendants' acts of unfair competition are willful and this is an exceptional case within the meaning of 15 U.S.C § 1117.

**COUNT IX**
**FLORIDA COMMON LAW UNFAIR COMPETITION**
(against all Defendants)

143.    PayCargo re-alleges and incorporates by reference paragraphs 1-54 as if fully set forth herein.

144.    Count IX is an action under the common law of the State of Florida for unfair competition against all Defendants.

145.    Defendant has exploited its status as a user of the PayCargo system to obtain information on PayCargo's operations it would not otherwise would have, and Defendant has used that information unfairly to compete against PayCargo.

146.     PayCargo has been and will continue to be harmed by Defendants' wrongful conduct.

147.     Defendant's aforesaid actions have irreparably harmed Plaintiff and will continue to irreparably harm Plaintiff unless enjoined by the Court, as a result of which Plaintiff is without adequate remedy at law.

148.     Plaintiff has been damaged as a result of Defendant's actions.  As the direct and proximate result of Defendants' deliberate and intentional actions, Defendants have been unjustly enriched while Plaintiff continues to suffer injury in an amount not yet ascertained.

**COUNT X**
**BREACH OF CONTRACT (Services Agreement)**
(against CargoSprint)

149.     PayCargo re-alleges and incorporates by reference paragraphs 1-54 as if fully set forth herein.

150.     This Count X is an action for breach of the PayCargo Services Agreement against CargoSprint.

151.     In using the PayCargo System, CargoSprint agreed to the terms of the PayCargo Services Agreement.

152.     PayCargo performed each and all of its obligations under the PayCargo Services Agreement, or was excused from doing so.

153.     CargoSprint breached numerous provisions of the PayCargo Services agreement including Sections 4.4, 4.6, 16.2, and 17.2 by improperly utilizing the PayCargo System to develop CargoSprint's SprintPay system.

154.     CargoSprint also breached Section 4.5 of the PayCargo Services Agreement by accessing data not intended for CargoSprint and logging into servers or accounts CargoSprint was not authorized to access.

155.     CargoSprint further failed to comply with Section 4.2 of the PayCargo Services Agreement by providing access to unauthorized persons, including the software teams in Mexico and India when such individuals were not Authorized Users under the PayCargo Services Agreement.

156.     CargoSprint's failures under the PayCargo Services Agreement continue with the refusal to comply with PayCargo's inspection right under Section 18.2 after PayCargo sent its July 3, 2019 cease and desist letter.

157.     As a direct and proximate result of CargoSprint's breaches of the PayCargo Services Agreement, PayCargo has suffered commercial injury, including damages, and other irreparable harm.

## PRAYER FOR COSTS AND ATTORNEYS FEES

Plaintiff PAYCARGO, LLC requests an award of reasonable costs and attorney fees pursuant to 18 U.S.C. § 1836(b)(3)(D); 15 U.S.C. § 1117(a)-(d); Fla. Stat. § 668.804(2); the Settlement Agreement; the PayCargo Services Agreement; and any other applicable basis for costs and attorney's fees based upon the claims brought herein.

## REQUEST FOR JURY TRIAL

Plaintiff PAYCARGO, LLC requests jury trial of any matter so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, for all the forgoing reasons, Plaintiff PAYCARGO, LLC requests this Honorable Court grant relief in the following manner:

a)      Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminarily and permanently enjoined from infringing the PayCargo Trademarks and PayCargo's federal common law rights in PAYCARGO;

b)      PayCargo be awarded all other monetary remedies available under the Lanham Act and common law, including but not limited to penalties, fines, compensatory damages, treble damages, disgorgement of profits, interest, costs and attorney's fees as legally permitted by each count respectively;

c)      Judgment against Defendants for willful infringement of United States Trademark Registration 3,519,112 under 15 U.S.C. § 1114, including a disgorgement of profits and other applicable damages;

d)      Judgment against Defendants for willful infringement of United States Trademark Registration 3,900,069 under 15 U.S.C. § 1114, including a disgorgement of profits and other applicable damages;

e)      Judgment against Defendants for willful infringement of United States Trademark Registration 3,347,315 under 15 U.S.C. § 1114, including a disgorgement of profits and other applicable damages;

f)      Judgment against Defendants for Federal Unfair Competition under 15 U.S.C. § 1125, including any and all applicable damages;

g)      Judgment against PayCargo for Florida Common Law Breach of the PayCargo Services Agreement, including any and all applicable damages;

h)      Judgment against Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminarily and permanently enjoined under 18 U.S.C. §1836(b)(3)(A) regarding and relating to the access, review, maintenance and/or

use of the PayCargo Trade Secrets. Such preliminary and then later permanent injunction should be sufficient in scope and effect so as to prevent any actual or threatened misappropriation, as identified above, on such terms as this Court deems reasonable to prevent Defendants from entering into relationships that may risk such misappropriation and should include conditions placed on any future employment so not to risk threatened misappropriation. Such scope should include an order demanding the wiping and/or forensic removal of any and all sensitive information obtained by Defendants;

i)      PayCargo be awarded all other monetary remedies available under both 18 U.S.C. § 1836(b)(3)(C) as well as the common law, including but not limited to, penalties and fines, compensatory damages, exemplary damages, disgorgement of profits, interest, costs and attorney's fees as legally permitted by each count respectively;

j)      Judgment against Defendants for violations of Florida's Computer Abuse and Recovery Act (Fla. Stat. § 668.801 et al), including any and all applicable damages such as actual damages, lost profits, economic damages, violator's profits, recovery for harm and loss due to: Defendants' actions;

k)      Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminarily and permanently enjoined under Florida Statute §668.804(c)&(d) to prevent future unauthorized login-ins and/or improper access to the PayCargo System and to recover the underlying misappropriated information, program or code as well as all copies thereof from Defendants;

l)      Judgment against Defendants for Conversion of PayCargo's confidential and proprietary information, including any and all applicable damages;

m)    Judgment against CargoSprint for breach of the PayCargo Services Agreement, including any and all applicable damages;

n)    Judgment against Defendants for breach of the Settlement Agreement, including any and all applicable damages;

o)    Judgment against Defendants for Florida Common Law Unfair Competition, including any and all applicable damages;

p)    Any and all other relief that this Honorable Court deems just.

DATED this 18th day of July, 2019.

Respectfully submitted,

*/s/ **Wayne R. Atkins***

XANDER LAW GROUP, P.A.
Wayne R. Atkins
Florida Bar No. 84000
One NE 2nd Avenue, Suite 200
Miami, FL 33132
Phone: 305-767-2001
Facsimile: 855-926-3370
Email: wayne@xanderlaw.com

EVERSHEDS SUTHERLAND (US) LLP
Ann G. Fort  (*pro hac vice* forthcoming)
999 Peachtree St. NE, Suite 2300
Atlanta, GA 30309
Phone: 404-853-8000
Facsimile: 404-853-8806
Email: annfort@eversheds-sutherland.com

Cameron C. Murphy
Florida Bar No. 0125086
999 Peachtree St. NE, Suite 2300
Atlanta, GA 30309
Phone: 404-853-8000
Facsimile: 404-853-8806
Email: cameronmurphy@eversheds-sutherland.us
*Counsel for Plaintiff PAYCARGO, LLC*

31