**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:19-CV-22995-LOUIS

PAYCARGO, LLC,

      Plaintiff,
v.

CARGOSPRINT LLC, and
JOSHUA WOLF, an individual

      Defendants.
_____/

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** comes before the Court upon Plaintiff PayCargo, LLC's Motion for Partial Summary Judgment (ECF No. 164). Defendants CargoSprint LLC and Joshua Wolf responded in opposition (ECF Nos. 172, 173) and Plaintiff filed a Reply (ECF No. 186). At Plaintiff's request, oral argument was conducted on the Motion on June 2, 2021 (ECF No. 242).

Plaintiff contends that the undisputed facts warrant summary judgment as to liability on all of its claims, and establish Plaintiff's entitlement to a permanent injunction and disgorgement of Defendants' infringing profits. Plaintiff acknowledges the need for trial on the amount of profits to be disgorged, attorney's fees and prejudgment interest.

In opposition, Defendants contend that Plaintiff's Motion mischaracterizes the evidence, but they advance little contrary evidence to dispute Plaintiff's side of the story. Defendants' primary defense of Plaintiff's Motion is their own motion for summary judgment, which asserts a number of affirmative defenses to Plaintiff's claims for breach of contract and trademark infringement. I have, by separate order, denied Defendants' Motion for Summary Judgment (ECF No. 244), finding that Defendants failed to demonstrate entitlement to their affirmative defenses.

1

The facts here are, for the most part, not meaningfully in dispute. Which is to say, there is no material dispute of fact supported by competent evidence by the party opposing the motion, and I find summary judgment is warranted with respect to liability on Plaintiff's claims of trademark infringement and unfair competition based on federal law. Plaintiff has not, however, demonstrated entitlement to its claim for breach of contract nor on its unfair competition claim predicated on Florida law. Accordingly, the Motion is granted in part, and denied in part, as follows.

## I.      BACKGROUND

Plaintiff PayCargo provides an electronic payment management system in the freight and cargo shipping industry; its platform enables vendors, shippers, and other operators to pay for goods shipped, thereby allowing quick release of the goods by the payee. PayCargo has existed since 2008 and has been operating since at least 2009. PayCargo holds three trademarks: U.S. Registration No. 3,519,112 (the "112 Registration"), U.S. Registration No. 3,347,315 (the "315 Registration"), and U.S. Registration No. 3,900,069 (the "069 Registration") (collectively, the "PayCargo Marks").[1]

Defendant CargoSprint similarly provides a service to vendors and other operators in the freight and cargo shipping industry. Defendant Joshua Wolf created the company, which he named "PayAirCargo," in 2012. At the time, he was well aware of Plaintiff PayCargo; indeed, he registered on the PayCargo system as a client in relation to a prior entity he had founded. Though Plaintiff and Defendant are competitors, they operate differently; for example, Defendants' business relied at first on printed checks and couriers delivering them to the shippers, and the

---

[1] The history of registration, assignment to Plaintiff, and incontestability are explained in more detail in the Order denying Defendants' Motion for Summary Judgment. Pertinent here, I found the fact of Plaintiff's ownership of the trademarks established pursuant to Fed. R. Civ. P. 56.

resulting time to complete payment, and amount for services charged, differs between the competitors. They both serve the same or similar customers (and potential customers), and they attend the same trade conferences in pursuit of those customers.

When PayAirCargo was still fairly new, customers seeking Plaintiff contacted Defendant by mistake. In 2013, a client referred a potential customer to Defendant and corresponded with Defendant Wolf about the referral. He deduced from the inquiry that the customer had the businesses confused, recognizing from her description of services offered that she had the Plaintiff in mind. The referring client responded to Wolf with the question "[w]hy don't you change your name so it isn't so similar?"[2] Another customer in 2013 responded to solicitation by PayAirCargo by stating it was an existing customer with an account, from which Defendant Wolf again deduced that the customer "may be confusing" his company with PayCargo.[3] The customer's response reveals his belief that there was an affiliation between PayCargo and PayAirCargo, which Wolf dispelled with an explanation of the competitor's services and pricing.

Over the years, customers continued to contact one mistaking it for the other, and expressed confusion over whether the entities were the same or related. In 2016 for example, a customer wrote to PayAirCargo asking if she could access the system through PayCargo, or if a new account was required.[4] Others sent communications intended for PayCargo to PayAirCargo—both had email accounts beginning with "support@" followed by their respective domain names.[5]

Plaintiff first learned of Defendants' existence in approximately 2015 (ECF No. 18-1 ¶ 13). Over the course of a year, the Parties contemplated a sale of Defendant (then "PayAirCargo") to

---

[2] ECF No. 238-18
[3] ECF No. 238-19.
[4] ECF No. 238-21.
[5] ECF No. 238-45.

Plaintiff. In August 2015, the Parties engaged in a "Cooperative Discussion"[6] about working together; Wolf, on behalf of Defendants, expressed interest in using the PayCargo system to service an existing customer, for which he would pay Plaintiff's fees like a customer. Indeed, Wolf created an account for PayAirCargo on the PayCargo system. Two months later, apparently the discussions had not resulted in any mutually beneficial business, and Plaintiff's representative warned Wolf that Plaintiff would be increasing the fees charged to Defendants for any transaction on its system. Plaintiff's representative explained that because Defendants were essentially a competitor, his colleagues had wanted to close Defendants' account on Plaintiff's system, but he convinced them not to. Six months after that communication, Wolf suggested an in-person meeting when he traveled to Miami sometime in the unknown future. Plaintiff's representative responded affirmatively and followed up the next month again to see when Wolf would be traveling to Miami.

Three months later, in August 2016, Plaintiff sent a cease and desist letter demanding Defendants cease use of the name "PayAirCargo." The letter notes the Plaintiff's present intention not to pursue judicial intervention and requests written confirmation of receipt and compliance by Defendants. Eventually, the Parties resolved their dispute by entering into a settlement agreement.

On December 2, 2016, Plaintiff and Defendants entered into a Settlement Agreement that required Defendants to cease all use of the infringing name "PayAirCargo" (ECF No. 100-1). Among the recitals in the Settlement Agreement were the facts that "PAYCARGO" was a registered trademark, owned by Plaintiff PayCargo, and that the Parties held opposing beliefs as to whether Defendants had infringed on Plaintiff's trademarks. Indeed, the Parties expressly included a provision that neither the Agreement nor anything therein was to be construed as evidence of any liability or unlawful conduct.

---

[6] Not my characterization; it's the subject line of the email (ECF No. 164-64).

The Parties agreed, as the first term and condition of their Settlement Agreement, that PayAirCargo would formally change its name and cease conducting business using the "PayAirCargo" name. Defendants agreed not to seek any intellectual property protection for the name "PayAirCargo," or any confusingly similar name—the Parties expressly agreed that the name "CargoSprint" was acceptable to both. Defendants agreed to cease all forms of advertising under the name "PayAirCargo," the term advertising having been intricately defined under the Settlement Agreement.

As a term of the settlement, Defendants were to cease sending emails from, but not receiving emails at, the email address support@payaircargo.com and to cease all use of the "Payaircargo.com" domain. Defendants were to announce its new corporate name on the old website and transfer the domain "payaircargo.com" to a third-party escrow, acceptable to both Parties, who would split the fees owed to the escrow agent.

The Settlement Agreement contemplated a period of interim use of the "PayAirCargo" name: between January 1 and May 31, 2017, the "PayAirCargo.com" landing page would direct traffic to the new webpage, and during the same period, Defendants' invoices were to include an explanatory note regarding its new name.

The Settlement Agreement contains reciprocal contingent releases. Plaintiff's release states as follows:

> Contingent upon the faithful completion by the Wolf Entities of their obligations under this Agreement, PayCargo, LLC hereby releases, discharges and covenants not to sue the Wolf Entities … for and from any and all claims, demands, rights, damages, claims for liquidated damages, costs, expenses, attorneys' fees, subrogation rights, compensation, lawsuits, obligations, promises, administrative actions, charges and causes of action known by PayCargo or otherwise disclosed by PayAirCargo prior to the execution of this Agreement, in law or in equity, or any kind whatsoever… <u>including but not limited to</u>: any and all claims and causes of action arising out of the use of the marks in the Trademark Registrations or the name PayAirCargo….

(*Id.* ¶ 9) (emphasis in original). Defendants were represented by legal counsel in the negotiation, drafting, and execution of the Settlement Agreement (ECF No. 171-5, Wolf Deposition Transcript 120:13-122:14). That legal counsel is board certified in intellectual property law (ECF No. 171-6).

Even after Defendant changed its name, some customers continued to mistake the two companies[7] and direct communication for PayCargo to CargoSprint,[8] or would simply copy both companies on the same email inquiry at their respective email address domains of "paycargo.com" and "cargosprint.com."[9]

In 2018, Plaintiff learned Defendants had not ceased use of the PayAirCargo name on its invoices but continued to include the explanatory note that "PayAirCargo" had evolved and is now known as "CargoSprint." Plaintiff sent a cease and desist letter to Defendants on July 10, 2018 demanding that Defendants cease use of the infringing name (ECF No. 100-6). Defendants responded to Plaintiff's letter on July 25, 2018 providing the assurance requested (ECF No. 100-7). Defendants received no further complaints from Plaintiff until a July 3, 2019 cease and desist letter from Plaintiff that alleged further violations of the Settlement Agreement (ECF No. 100-8). This suit followed shortly thereafter.

## II. APPLICABLE LAW

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

---

[7] ECF Nos. 238-43, 238-86.
[8] ECF No. 238-87.
[9] ECF No. 238-113.

demonstrate the absence of a genuine issue of material fact*." Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must support its assertion that a genuine material fact remains in dispute by citing to specific parts of the record. *Sutton v. Royal Caribbean Cruises Ltd.*, 285 F. Supp. 3d 1349, 1351 (S.D. Fla. 2018) ("In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, answers to interrogatories, and admissions that a specific fact exist demonstrating a genuine issue for trial."), *aff'd*, 774 F. App'x 508 (11th Cir. 2019). The Court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *It's a 10, Inc. v. Beauty Elite Grp., Inc.*, No. 13-60154-CIV, 2013 WL 6834804, at *2 (S.D. Fla. Dec. 23, 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A fact or issue is material for purposes of summary judgment only if it might affect the outcome of the suit under the governing law. *Webb v. Carnival Corp.*, No. 15-CV-24230, 2017 WL 10795681, at *2 (S.D. Fla. Jan. 13, 2017).

In considering a motion for summary judgment, a court must evaluate the evidence and make all inferences in the light most favorable to the nonmoving party. *Sutton*, 285 F. Supp. at 135 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586). However, the nonmoving party may not merely point to a scintilla of evidence that creates a metaphysical doubt about an issue; instead, the evidence must be sufficient to allow a rational trier of fact to find for the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87. Evidence is required; conclusory and unsubstantiated averments will not do, *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000), and citations to specific record evidence are necessary, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116-17 (11th Cir. 1993).

### III. ANALYSIS

#### a. Breach of Contract

Plaintiff alleges that Defendants materially breached the Settlement Agreement by failing to cease use of the "PayAirCargo" name by May 31, 2017 (ECF No. 100 ¶ 118). Defendants dispute that the conduct complained of by Plaintiff constitutes a breach of the agreement. Defendants further advance an affirmative defense of accord and satisfaction to challenge Plaintiff's claim, to the extent the claim is predicated on Defendants' continued use of the infringing name on invoices until July 2018.

Under Florida law, the elements of a breach of contract claim are: "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006). "In addition, in order to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance." *Id.* As the party seeking summary judgment on a factual issue with respect to which it bears the burden of proof, Plaintiff must present evidence on each element so decisive that no reasonable fact finder could find for Defendants. *Fitzpatrick*, 2 F.3d at 1115.

Under Florida law, the question of whether a valid contract exists is a threshold question of law that may be properly decided by the court. *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014). "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance;

(3) consideration; and (4) sufficient specification of the essential terms." *Id.* Plaintiff attached to its Second Amended Complaint a copy of the Settlement Agreement it alleges Defendants breached. Defendants raise a number of defenses to Plaintiff's contract claim, but no challenge to the validity of the Settlement Agreement.

In its Second Amended Complaint, Plaintiff alleges that it either performed each of its obligations under the Settlement Agreement or was excused from doing so (ECF No. 100 ¶ 117). On summary judgment, Plaintiff offers no evidence that it performed in any respect, and indeed, the only thing Plaintiff was required to do by the Settlement Agreement was release its claims against Defendants. Plaintiff argues that it was excused from performing on the release because it was a contingent release, and Defendants' failure to faithfully perform—i.e. Defendants' continued use of the infringing name—means the contingency never came to pass.

Plaintiff's reliance on *Belcher v. Imp. Cars, Ltd.*, 246 So. 2d 584, 586 (Fla. 3d DCA 1971) is interesting. Cited for the proposition that a *release* is not valid if a condition precedent is not first met, *Belcher* indeed held that the releasor was not bound by the release, but it also found that the agreement on which plaintiff sued was unenforceable: "It is our view that the letter of March 21, 1969, was not enforceable because it was subject to a condition precedent which was not fulfilled." *Id.* Applied here, *Belcher* would seem to suggest by Plaintiff's own terms that the very contract on which Plaintiff's claims are premised is not enforceable because it was subject to a contingency that never occurred—that contingency being Defendants' faithful completion of its performance. Nonetheless, and as noted above, the existence of an enforceable contract was not challenged by Defendants. Because summary judgment must be denied on another basis, however, the Court need not resolve this issue at this time.

Plaintiff alleges that Defendants materially breached the Settlement Agreement by

9

continuing to use the infringing name, for example, in correspondence to a common customer of both Plaintiff and Defendants, describing the communication as relating to the "CargoSprint/PayAirCargo Account."[10] In 2018, approximately one year after Defendants were to have ceased all use of the PayAirCargo name, Defendants continued to include the explanatory language on its invoices that "PayAirCargo has evolved! We are now CargoSprint." Following another cease and desist letter from Plaintiff, in July 2018, Defendants ceased inclusion of the explanatory note and any use of the infringing name from its invoices. However, Defendants continued to send and receive emails at the support@payaircargo.com address as late as December of 2018, a full two years after executing the settlement agreement.[11] Inspection of the Defendants' software system further revealed other uses of the name, including a default designation of the support@payaircargo.com email address internally for customers who failed to provide an email address, which use was displayed to the customer in correspondence from Defendants.[12]

Plaintiff argues that summary judgment is warranted because the continued uses of the infringing name—which are not disputed—are material breaches that went to the "essence of the contract." Plaintiff here does not shun its burden to demonstrate the materiality of the breaches alleged, arguing that Defendants' failures to comply with their obligations were numerous and serious, thus entitling Plaintiff to summary judgment.

Whether or not Defendants' continued use of the infringing name under the circumstances constitutes a material breach of the Settlement Agreement is a question of fact to be determined by the trier of fact. *See Hall of Fame Assocs. v. 550 Seabreeze Dev., LLC*, No. 08-60043-CIV, 2008 WL 11331652, at *2 (S.D. Fla. Sept. 11, 2008) (denying plaintiff's motion for summary

---

[10] Second Amended Complaint ¶ 53. This incident is not described in Plaintiff's statement of material facts in support of the Motion for Partial Summary Judgment.
[11] ECF No. 238-116.
[12] ECF No. 238-76.

judgment, notwithstanding failure of defendant to even file response, finding plaintiff had failed to demonstrate that breach alleged was material). The line of cases Plaintiff cites to support its contention that the breach here is material recognize as much, with most of them rejecting the contention that materiality can be decided as a matter of law. *See, e.g.*, *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014) (denying motion to dismiss and noting that "[w]hether a particular breach is material raises an issue of fact," not appropriate for resolution by the court on a motion to dismiss). Though the evidence is largely not in dispute, the question of whether Defendants' use of the infringing name rises to the level of *material* is less clear. Compare, for example, the stark contrast between the circumstances here and those present in *Am. Diabetes Ass'n v. Friskney Fam. Tr., LLC*, 177 F. Supp. 3d 855, 868 (E.D. Pa. 2016), a case also advanced by Plaintiff. The court in *Friskney* found the defendant's active and intentional use of a confusingly similar name, which included actively posting on social media and registering the name as a domain name with *GoDaddy* just days after signing a settlement agreement, went directly to the essence of the contract such that no reasonable jury could conclude that his actions did not rise to the level of a material breach. *Id*. Applying the factors enumerated in the Restatement (Second) of Contracts for determining the materiality of breach, the court relied on substantial evidence of defendant's lack of good faith effort to hold up his end of the bargain. *Id*.

Defendants' use of the infringing name after entering into the Settlement Agreement is not disputed. However, this alone does not satisfy the Plaintiff's burden to prove materiality. The essence of the Settlement Agreement here captured, in part, Defendants' willingness to meet Plaintiff's terms and cease using the name PayAirCargo. Indeed, Defendants argue not only that they had strong incentives to stop using the name but also no desire to continue using it. And Defendants' behavior subsequent to the Settlement Agreement does not contradict this;

11

Defendants, for example, changed the corporate Defendant's name and implemented the stipulated changes to their invoices, noting that their name had changed and was no longer PayAirCargo. The fact that their invoices reflected this note longer than the agreed-upon transition period violates the Settlement Agreement, it is true, and the Court recognizes the evidence advanced by Plaintiff of other examples of post-settlement use of the infringing name, including use of the domain name on email correspondence and on social media. Notwithstanding this, "violation" is not inherently synonymous with "material." And it certainly cannot be said that Defendants flagrantly disregarded the terms of the bargain. *Cf. Friskney Fam. Tr., LLC*, 177 F. Supp. 3d at 868. Put more simply, the Parties disagree regarding the essence of the Settlement Agreement, with Plaintiff essentially arguing that because Defendants agreed to stop using the name, the fact that they did not *ipso facto* betrays the heart of the contract. But this oversimplifies the analysis and is too cursory to support a finding of materiality. To find for Plaintiff on this Motion, the evidence would have to be such that no reasonable jury could conclude that the Defendants' breach was immaterial. Plaintiff has not advanced evidence sufficient to compel that conclusion here, and thus the factual question of materiality will have to be determined at trial. Accordingly, Plaintiff's Motion is denied with respect to its breach of contract claim.

    b. <u>Trademark Infringement</u>

A plaintiff bringing a claim for infringement of a registered trademark under 15 U.S.C. § 1114 must plead and establish "that the infringer (1) used the mark in commerce, without consent; and (2) that the use was likely to cause confusion." *Aronowitz v. Health–Chem Corp.*, 513 F.3d 1229, 1239 (11th Cir. 2008) (per curiam). Although likelihood of confusion is a question of fact, *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 839 n.16 (11th Cir. 1983); it may be decided as a matter of law, *All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d

895, 907 (11th Cir. 2000).

In determining whether a likelihood of confusion exists, the Court should look to the following factors: "(1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion." *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir.1997) (per curiam). The Court should consider all of the factors together, and no single factor is dispositive. *It's a 10, Inc.*, 2013 WL 6834804, at *3 (granting summary judgment, in part, on trademark infringement claims). The district court must evaluate the weight to be accorded to the individual subsidiary facts and then make its ultimate fact decision. *Jellibeans, Inc.*, 716 F.2d at 840 n.17.

Defendants challenge only two of the seven factors: type of the mark and Defendants' intent. The first challenge reiterates Defendants' previous arguments on validity and strength of the Marks, containing as well a predicate challenge to Plaintiff's ownership of the marks. The fact of Plaintiff's ownership has been deemed established (ECF No. 244), and it will not be revisited here. In addition to evaluating the two factors challenged by Defendants, the Court considers the evidence of confusion.

To be valid, a trademark must be "distinctive"—that is, it must "serve the purpose of identifying the source of ... goods or services," not just the goods and services themselves. *Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.*, 958 F.3d 1323, 1327 (11th Cir. 2020). Distinctiveness is a function of strength, and there are four categories, in descending order of strength: (1) 'fanciful' or 'arbitrary,' (2) 'suggestive,' (3) 'descriptive,' and (4) 'generic.'" *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 950 F.3d 776, 783 (11th Cir. 2020).

Defendants challenge the Marks as generic and are thus not entitled to protection under the

Lanham Act. The case on which Defendants rely for this proposition is inapposite and has no applicability to this infringement dispute; the Court there evaluated the standards to be applied by the Patent and Trademark Office in determining eligibility to register a mark, noting that a generic mark is ineligible for registration. *United States Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2303 (2020).

Defendants here bear the burden to disprove inherent distinctiveness, given that registration with the PTO entitles a mark's holder to a presumption of either inherent or acquired distinctiveness, depending on the ground on which registration was obtained. *See Royal Palm*, 950 F.3d at 784. When the registrant registered "PayCargo," it was not required to—and did not—provide evidence of any acquired secondary meaning. Accordingly, and as a result of the PTO's registration, the mark is presumed to be inherently distinctive and thus at least suggestive. *Engineered Tax Servs., Inc.*, 958 F.3d at 1328. Defendants' challenge to the validity of the marks has been rejected, and in advancing this as an affirmative defense, Defendants have failed to offer evidence sufficient to raise a material dispute as to the validity of the marks.

Plaintiff's proof of actual confusion resulting from Defendants' use of a confusingly similar mark constitutes such strong evidence of likely confusion as to preclude any reasonable finding otherwise. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1515 (11th Cir. 1984) (finding likelihood of confusion as a matter of law based on evidence of misdirected inquiries from distributors, suppliers, prospective customers, and misdirected billing inquiries). Plaintiff has adduced many instances over several years of customers contacting Defendants in the stated mistaken belief that the communication was reaching Plaintiff, one going so far as to suggest that Defendants should change their name to something less similar; other customers expressed their belief that the two companies were the same and "CargoSprint" was the new name of "PayCargo."

Plaintiff's Motion also attaches a variety of other sample communications from customers that, taken in the light most favorable to the non-movant, do not support the inference that the customer was confused by the similarity in the names. Notwithstanding the deluge of ambiguous exhibits attached to Plaintiff's motion, the evidence of *actual* confusion is so strong no other finding may be reasonably supported.

Defendants' Opposition offers no counter whatsoever to Plaintiff's evidence of actual confusion. Rather, Defendants proffer the evidence of Defendants' intent to migrate from use of the infringing name, including their entry into the Settlement Agreement in 2016, cooperation in construing the language for the preliminary injunction in this case, and retention of an expert to assist in correction of third-party usage of the infringing name. As discussed above, while this evidence may be relevant for consideration in the context of whether Defendants breached the essence of the Settlement Agreement, it does not materially rebut the proposition that customers were likely to be confused, and indeed were confused, by Defendants' use of the infringing name.

Defendants have failed to refute the evidence advanced by Plaintiff that indisputably demonstrates Plaintiff's entitlement to summary judgment on its Lanham Act claims. Similarly, Defendants' argument against entry of summary judgment on claims against individual Defendant Wolf is predicated on success of its arguments herein and raises no independent grounds to avoid the entry of judgment against Wolf. Accordingly, Plaintiff's Motion for Summary Judgment on its trademark infringement claims are granted as to both Defendants.

Defendants have acknowledged Plaintiff's entitlement to a permanent injunction that mirrors the language of the Court's preliminary injunction order should liability be found in favor of Plaintiff on these claims. That injunction will be entered by separate order. Similarly, Defendants have raised no argument against Plaintiff's entitlement to seek disgorgement of profits,

with that amount to be determined at trial.

    c. Unfair Competition

Plaintiff alleges that Defendants' use of the infringing name constitutes false designation of origin likely to cause confusion and deceive customers into believing Defendants are associated with Plaintiff. Plaintiff's Federal unfair competition claims are predicated on 15 U.S.C. § 1125(a). Plaintiff argues, and Defendants do not meaningfully dispute, that the requirements for Plaintiff's Federal unfair competition claim are the same as its trademark infringement claim; the satisfaction of the latter being sufficient to find in favor of Plaintiff on the former. On the undisputed facts described above, summary judgment is warranted on Plaintiff's Federal unfair competition claim.

Plaintiff additionally brings a claim under Florida common law for unfair competition, alleging that Defendants "exploited their status as users of the PayCargo System to obtain information on PayCargo's operations that Defendants would not have been able to obtain otherwise" (ECF No. 100 ¶ 134). In its Motion, Plaintiff argues that by establishing entitlement to judgment on the Federal claim it has satisfied the requirements for the Florida law claim. In Opposition, Defendants note that Plaintiff's state claim for unfair competition is predicated on conduct that differs from its federal claim. In Reply, Plaintiff offers only that its Florida unfair competition claim (Count VI) incorporated the same allegations from previous paragraphs in the complaint as did the Federal claim. Though technically true, the argument is nonetheless unavailing.

First it bears noting that *every* Count re-alleged and incorporates by reference all 80 paragraphs preceding its claims, so every claim is predicated on the same conduct. Notwithstanding, Plaintiff's claim for Florida unfair competition makes no allegation arising from Defendants' use of the infringing name. Plaintiff has advanced no other basis for summary

judgment on this Count, and its Motion is denied with respect to Count VI.

### IV CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is **GRANTED** in part and **DENIED** in part. Summary judgment is granted with respect to Plaintiff's trademark infringement claims (Counts I-III) and its claim for unfair competition under federal law (Count V). The Motion is **DENIED** with respect to Plaintiff's claim for breach of contract (Count IV) and unfair competition under Florida law (Count VI). Plaintiff shall submit a proposed order for entry of the permanent injunction after conferral with Defendants over same.

**DONE** and **ORDERED** in chambers in Miami, Florida this 17th day of June, 2021.

LAUREN F. LOUIS
**UNITED STATES MAGISTRATE JUDGE**