# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:19-cv-22995-LOUIS

PAYCARGO, LLC,

    Plaintiff,

vs

CARGOSPRINT LLC, and
JOSHUA WOLF, an individual

    Defendants.

_____/

## ORDER

**THIS MATTER** comes before the Court upon Plaintiff PayCargo, LLC's ("PayCargo") Motion to Exclude Testimony of Expert John G. Plumpe (ECF Nos. 187, 188). Defendants CargoSprint LLC ("CargoSprint") and Joshua Wolf filed a Response (ECF No. 209), to which Plaintiff filed a Reply (ECF No. 258). Upon consideration of the Motion, Response, Reply, and being otherwise duly advised on the matter, the Court hereby **DENIES** Plaintiff's Motion *In Limine*.

### I. BACKGROUND

Plaintiff initiated this action against Defendant CargoSprint and its Chief Executive Officer, founder and president Joshua Wolf, alleging that Defendants breached the terms of the Parties' Settlement Agreement by continuing to use the name "PayAirCargo" in connection with CargoSprint's business, thereby infringing on Plaintiff's trademarks. As part of its damages, Plaintiff intends to seek disgorgement of Defendants' profits resulting from the infringing transactions.

Defendants disclosed Plumpe as their damage expert. In his Expert Report, Plumpe provides opinions regarding the portion of Defendants' revenues and profits that may be

1

attributable to Defendants' use of the name "PayAirCargo" (ECF No. 188-1). Plumpe calculated the total revenues and profits earned by CargoSprint, and then conducted an apportionment analysis to "distinguish between (1) a defendant's profits attributable to its accused unlawful actions, and (2) profits attributable to other factors and not attributable to the alleged infringement" (*id*. at ¶ 58). Plumpe also provided a Rebuttal Expert Report, which include similar calculations and opinions regarding profits and apportionment (ECF No. 188-2).

Plaintiff moves to exclude Plumpe's opinions on Defendants' incremental operating profits, revenue attribution, and profit apportionment, claiming that neither Plumpe's methodology nor the evidence underlying his opinions are reliable. Defendants filed a Response arguing that Plumpe's opinions were based upon both reliable methodology and evidence (ECF No. 209), Plaintiff replied (ECF No 258), and the Motion is now ripe for consideration.

## II. LEGAL STANDARD

A motion *in limine* seeks to exclude evidence prior to trial. A subset of those are known as *Daubert* motions, which refers to the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), wherein the Court held that the trial court must serve as a "gatekeeper" of expert witnesses to ensure that their testimony is both reliable and relevant. Federal Rule of Evidence 702, amended in 2000 in response to the *Daubert* decision, states that an expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d).

The Eleventh Circuit has required the trial court to conduct a "rigorous three-part inquiry"

under Rule 702, considering whether: (1) the expert is qualified to testify competently regarding the matter he intends to address ("qualification"); (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* ("reliability"); and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue ("helpfulness"). *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

However, in a bench trial, "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for h[er]self." *U.S. v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005); *see also Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in Daubert are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *Ass Armor, LLC v. Under Armour, Inc.*, No. 15-cv-20853-CIV, 2016 WL 7156092, at *4 (S.D. Fla. Dec. 8, 2016) ("As this is a bench trial without a jury, however, the need for an advance ruling to exclude [expert] testimony is superfluous and unnecessary."). That is because the Court as a fact finder is "presumably competent to disregard what [s]he thinks [s]he should not have heard, or to discount it for practical and sensible reasons." *Ass Armor*, 2016 WL 7156092, at *4 (internal quotation marks and citations omitted).

Furthermore "[a]t trial, the Court as fact finder is free to later decide to disregard testimony in whole or in part and/or to decide how much weight to give it." *City of S. Miami v. Desantis*, No. 19-CV-22927, 2020 WL 7074644, at *6 (S.D. Fla. Dec. 3, 2020). "Because courts are 'almost always better situated during the actual trial to assess the value and utility of evidence,' the 'better practice is to deal with questions of admissibility of evidence as they arise' during the trial." *Id*. at *7 (quoting *Whidden v. Roberts*, 334 F.R.D. 321, 323 (N.D. Fla. 2020)). Under these relevant standards, the Court has considered Plumpe's opinions and Plaintiff's challenges to their

admissibility.

## III. DISCUSSION

As an initial matter, Plaintiff does not challenge Plumpe's qualifications to testify as an expert. Plumpe is a Managing Director at Epsilon Economics, an economic consulting firm, who holds a Bachelor of Science and Master of Science degrees in Mechanical Engineering from the University of Illinois; holds an M.B.A. from the University of Chicago Booth School of Business; and whose practice has focused on the analysis of damages, monetary relief and valuation issues in commercial disputes since 1999 (ECF No. 188-1 at ¶¶ 3, 4). He is qualified to offer an opinion on apportionment for purposes of disgorgement damages in this case.

Plaintiff challenges the reliability of the methodology and evidence used by Plumpe in forming his opinions. Plaintiff seeks to exclude Plumpe's opinions regarding revenue attribution and profit apportionment, as well as his opinion on Defendant CargoSprint's incremental operating profits based on his deduction of operating expenses. Plaintiff avers that Mr. Plumpe's "revenue attribution and profit apportionment methodology is not reliable, and the purported facts underlying his opinion are nothing more than the unverified assertions of the Defendants themselves" and that his deductions for operating expenses are "overstated and flawed because they are supported only by Defendants' assertions, which Mr. Plumpe did not verify" (ECF No. 188 at 9, 14). I will address each set of opinions in turn.

### A. Opinions Regarding Revenue Attribution and Profit Apportionment

For purposes of this Motion, profit apportionment is the determination of the profits attributable to the use of an accused trademark, separate from those profits associated with other non-accused elements (ECF No, 188-1 at ¶ 58). In conducting his apportionment analysis, Plumpe (1) identified factors that contributed to CargoSprint's revenues, which are unrelated to the name of

the company, based off his review of deposition testimony and discussions he had with CargoSprint Personnel (*id*. at ¶ 63); (2) conducted a revenue analysis before and after January 1, 2017, based on Defendants' Salesforce data, which showed continued growth of CargoSprint's business after it substantially decreased its use of the name "PayAirCargo" (*id*. at ¶¶ 68-77); and (3) apportioned CargoSprint's revenue from 2017-2020 by calculating, based on Defendants' Salesforce data, Defendants' overall revenue less those revenues earned from payments methods not accepted by Plaintiff (*id*. at ¶ 84).

Plaintiff avers there is no reliable methodology supporting Plumpe's opinion that multiple factors exist, beyond trade dress, that led to Defendants' revenues. In support of this argument, Plaintiff relies on *Hi Ltd. Partnership v. Winghouse of Florida, Inc*., 2004 WL 5486964 (M.D. Fla. 2004), for the proposition that "similar" positions have previously been excluded. In *Hi Ltd. Partnership*, the court found that no reliable methodology was used by the expert to determine that 90% of the defendant's profits were attributable to factors other than trade dress. *Id*. at *1. This conclusion was derived from the expert's own testimony admitting that the value he assigned to these non-trademark factors was merely an "estimation" and that "there is an aspect of subjectivity that's associated with translating a number of factors into a . . . gross number percentage of profitability." *Id*. at *3.

By contrast, Plumpe's disclosed opinion does not purport to make the same error of assigning a numerical value to that for which he had no basis for quantifying. Rather, Plaintiff's challenge to Plumpe's consideration of the identified factors rests on the claimed inadequacy of evidentiary support. Plaintiff avers that the factors identified by Plumpe were based mainly on unverified discussions with CargoSprint—not evidence from CargoSprint customers—and are thus unreliable. Defendants advance that Plumpe's methodology is consistent with the American Institute of Certified Public Accountants' Practice Aid on Intellectual Property Infringement

5

Damages, which discusses apportionment and various factors to be considered in an apportionment analysis including reputation, quality and functionality (ECF No. 204-6). Moreover, in calculating Defendants' revenue and profit apportionment, Plumpe used quantifiable financial data from Salesforce to calculate the total profits attributable to trade dress; not estimations (ECF No. 188-1 at ¶ 84). To the extent Plaintiff here contests the value of the data on which Plumpe relies for his opinion, the challenge goes to the opinion's weight and not its admissibility. *See United States for Use & Benefit of S. Site & Underground, Inc. v. McCarthy Improvement Co.*, No. 3:14-CV-919-J-PDB, 2017 WL 10434414, at *5 (M.D. Fla. Feb. 3, 2017) ("Challenges to the accuracy or source of facts underlying an expert's opinion are challenges to its weight rather than its admissibility").

Plaintiff further claims that "[e]ven if the methodology were reliable, the factual claims that underlay his opinion are not" (ECF No. 188 at 11). Plaintiff specifically challenges Plumpe's reliance on various discussions with CargoSprint personnel and avers that Plumpe did nothing to verify the information obtained from these discussions. Again, such challenges go to the weight and not admissibility of Plumpe's opinion. *United States for Use & Benefit of S. Site & Underground, Inc.*, 2017 WL 10434414, at *5. Furthermore, Plumpe's partial reliance on discussions with the client to form his opinion on damages is not a basis for excluding his opinion. *See Nielsen Audio, Inc. v. Clem*, No. 8:15-CV-2435-T-27AAS, 2017 WL 1483353, at *2 (M.D. Fla. Apr. 24, 2017) (An expert is "entitled to rely on [p]laintiff's documents and discussions with its personnel in forming his opinions regarding its damages, as this is the sort of information typically relied on by an expert calculating a party's damages."); *see also Knight through Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 809 (11th Cir. 2017).

Plaintiff also attacks Plumpe's "before and after" analysis, stating that "[a]lthough this purported significant reduction in the use of the PayAirCargo name was essential to this analysis,

6

he did not attempt to quantify CargoSprint's use of the name PayAirCargo, such as on invoices, after January 1, 2017" (ECF No. 188 at 11). It is not clear why Plaintiff insists this additional data point required quantification for the opinion to reach the threshold of admissibility. Plumpe's opinion assumed *de minimis* use of the infringing name. Plaintiff will undoubtedly cross examine him on this assumption and may very well diminish the weight of his opinion, but his methodology here disclosed satisfies the standard for admissibility. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (citing *Cummings v. Standard Register Co.*, 265 F.3d 56, 65 (1st Cir.2002); *see also Catalina Rental Apartments, Inc. v. Pac. Ins. Co.*, No. 06-20532 CIV, 2007 WL 1970808, at *5 (S.D. Fla. July 3, 2007). Moreover, Plumpe does not opine that *none* of the growth after January 1, 2017 can be attributed to the use of PayAirCargo. Plumpe merely compares CargoSprint's revenues, handling fees earned, number of transactions, number of unique payers, and vendors before and after January 1, 2017. In doing so, Plumpe recognized the continued use of PayAirCargo in limited instances, such as on invoices, and determined that such use was *de minimus* based on Josh Wolf and Jeffery Stubblefield's sworn testimony, Defendants' responses to Plaintiff's request for admissions and interrogatories, and discussions with Josh Wolf and Jeffery Stubblefield (ECF No. 188-1 at ¶¶ 60-61, n. 101-108). The analysis that Defendants' business was on an upward trajectory, based on Defendants' Salesforce data, while their use of the PayAirCargo name was on a downward trajectory is both reliable and relevant to help Defendants demonstrate that there are factors other than trade dress that contributed to CargoSprint's revenue and profits.

As such, the Court does not find that the striking of Plumpe's opinions regarding revenue attribution and profit apportionment is warranted at this juncture. As both gatekeeper and fact finder, the Court allow this evidence and assess its weight at trial.

### B. Plumpe's Testimony on Costs to be Deducted

Plaintiff avers that Plumpe's deductions for Claimed Operating Expenses are both overstated and flawed (ECF No. 188 at 14). First, Plaintiff challenges Plumpe's deduction of fixed or overhead expenses that he could not directly attribute to infringing revenues (*id*.). Defendants dispute this characterization and aver that Plumpe opined that it was appropriate to consider all operating expenses related to the generation of handling fees, as this constituted substantially all of CargoSprint's infringing revenues (ECF No 188-1 at ¶¶ 53-54). Plumpe later confirmed this opinion through the analysis of the Deloitte-compiled operating expense data (ECF No. 188-2 at ¶¶ 50-51); data which, according to Defendants, is "the same data Plaintiff's own experts rely on to determine Defendants' revenues and selected costs" (ECF No, 209 at 9). Even if the inclusion of all costs was in error, any such mistake in Plumpe's calculation goes to the weight of the testimony and not its admissibility. *See* *Quiet Tech. DC-8, Inc*, 326 F.3d at 1345.

Second, Plaintiff avers that Plumpe failed to exclude expenses that were incurred in connection with Defendants' other business activities (ECF No. 188 at 14). However, it was Plumpe's opinion that "SprintPass services were, and continue to be, used to raise awareness of CargoSprint's brand and services, and to increase customer goodwill by offering comprehensive services for cargo storage, transportation, and management to customers. Therefore, expenses from the SprintPass business unit should not be ignored . . . but instead should be considered to be deductions in the calculation of Defendants' profits" (ECF No. 188-2 at ¶ 38). While Plaintiff might disagree with this opinion, they provided no support for its inadmissibility. Furthermore, in an abundance of caution, Plumpe also calculated operating expenses excluding those expenses related to other business activities (*id*. at ¶¶ 64- 69). This calculation was based on additional

operating expense data obtained after preparing his initial Expert Report, including Deloitte's representation of operating expenses that appear in Salesforce (*id.*).

Third, Plaintiff claims that Plumpe "failed to analyze the propriety of payments to Wolf's mother-in-law, Maria Elvira Nunez De La O for purposes of his analysis" (ECF No. 188 at 15). However, this claim is rebutted by Plumpe's deposition testimony, in which he explains the steps he took to assess the propriety of the payments. Even if the propriety of the payments were not independently analyzed, as the court explained in *Minemyer v. B-Roc Representatives, Inc.*, No. 07 C 1763, 2009 WL 3757378, at *7 (N.D. Ill. Oct. 29, 2009), on which Plaintiff relies, "there is no overarching general requirement . . . that a financial or economic expert independently verify each entry or document on which he bases his opinions." Rather, the propriety of a financial document is a matter for "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof. . . ." *Id.* (citing *Daubert*, 509 U.S. at 596).

Lastly, Plaintiff claims that Plumpe ignored evidence that CargoSprint's accounting records were generally not reliable because they were allegedly not created contemporaneously with the transactions they record (ECF No. 188 at 15). This too goes to the weight and not admissibility of Plumpe's testimony. *See Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1364 (11th Cir. 2010) (finding the challenge that expert calculated lost profits based on company's revenue and cost data without verifying the accuracy of underlying data "went not to admissibility but to the weight to be attributed to his testimony") (internal quotations omitted); *Minemyer*, 2009 WL 3757378, at *7 (finding expert could testify on information provided by plaintiff and counsel "so long as the underlying data was not prepared exclusively for litigation").

Thus, the undersigned finds no basis to exclude Plumpe's testimony. Plaintiff may challenge Plumpe's opinion through fulsome cross-examination and presentation of its own experts. *See Daubert*, 509 U.S. at 596.

## IV. CONCLUSION

For the forgoing reasons, Plaintiff's Motion *In Limine* is **DENIED**.

**DONE** and **ORDERED** in Miami, Florida this 25th day of June, 2021.

_____
LAUREN F. LOUIS
**UNITED STATES MAGISTRATE JUDGE**